Hon. Ricardo S. Martinez

UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF WASHINGTON

STEVEN RUGGIERO,

    *Plaintiff*,

 v.

SPECIALIZED BICYCLE COMPONENTS, INC.,

    *Defendant*.

No. 2:25-cv-02053-RSM

MOTION TO ENFORCE
SETTLEMENT AGREEMENT
NOTING DATE: MAY 26, 2026

ORAL ARGUMENT REQUESTED

## I. INTRODUCTION.

Plaintiff Steve Ruggiero moves the Court to enforce the settlement agreement the parties reached on April 27, 2026. An email exchange that morning culminated a series of offers and counteroffers. Defendant Specialized Bicycle Components offered to settle this dispute for $175,000. Plaintiff immediately accepted, and Specialized's counsel confirmed the agreement. The entire exchange, but for one previous telephonic iteration of the settlement negotiations, occurred in writing. Specialized now refuses to honor that agreement because Plaintiff rejected a post-acceptance demand to also give Specialized the bicycle. Specialized attempted to add that material term to the agreement for the first time *after* the parties reached agreement. The Court should enforce the settlement and award Plaintiff his fees and costs incurred in bringing this Motion.

## II. RELEVANT FACTS.

The parties began discussing settlement terms almost immediately after Specialized removed the matter to this Court. Those discussions continued periodically thereafter,

MOTION TO ENFORCE SETTLEMENT AGREEMENT - 1
*RUGGIERO V. SPECIALIZED*, 2:25-CV-02053-RSM (W.D. WASH.)

ARD LAW GROUP

culminating on April 27, 2026. The entire settlement negotiation unfolded in a documented email chain spanning November 2025 through May 2026, attached as Exhibits A through T to the Declaration of Joel Ard:

On November 17, 2025, Plaintiff's counsel sent Defendant's counsel a formal FRE 408 settlement demand of $350,000. Ex. A (cover email); Ex. B (demand letter). Two months later, on January 23, 2026, Defendant's counsel Trevor Mohr countered with "Specialized's best offer of $100,000 to resolve this matter." Ex. C. On March 27, 2026, Plaintiff countered at $285,000, with the offer open until close of business March 31. Ex. D.

In April 2026, the parties engaged in meet-and-confer discussions covering both the pending discovery dispute and settlement. Attorney Anthony Sonnett of Lewis Brisbois entered the case on Specialized's side. Exs. E—G.

On April 24, Plaintiff's counsel followed up in writing, inviting Sonnett to draft the settlement documents: "Steve has near-zero views on the contents of a settlement and release, so it's probably quickest for you to take the pen, and we will have (probably) low to zero redlines." Ex. H. Sonnett responded the same day: "We are getting a bit more pushback from management than anticipated, but are still working on it. I expect we will know one way or the other on Monday." Ex. I.

On Monday, April 27, 2026, at 9:44 AM, Sonnett emailed Plaintiff's counsel with Specialized's offer:

> We were able to get Specialized management to agree to settle for $175,000. I won't get into the details, but it was a tough fight because Specialized is essentially self-insured, so this is their money.

Ex. J. Sonnett copied Christine Oh of Lewis Brisbois and Amy DeLong, Specialized's in-house counsel—confirming that Specialized management had authorized the offer. *Id.* Just as with every previous iteration of the settlement negotiations, Specialized's offer said nothing about returning the bicycle. Sonnett added: "I hope this gets it done. Otherwise, we will go ahead and serve supplemental responses as we discussed last week." *Id.*

Eight minutes later, at 9:52 AM, Plaintiff's counsel replied: "Accepted." Ex. K.

Four minutes after that, at 9:56 AM, Sonnett confirmed: "Great. We will get it done. Look for a draft in the next day or two." Ex. L.

Shortly thereafter, Sonnet emailed again, introducing a new term for the first time: "By the way, we are going to need the bike returned to us as part of the settlement. I think he will be able to afford a new one now, but please let me know ASAP if that is a problem." Ex. M. Two days later, on April 29, Lewis Brisbois sent a proposed eighteen-page Settlement Release and Hold Harmless Agreement. Ex. N; Ex. O. Instead of memorializing the agreed terms, the release included the new provision proposed by Sonnet after acceptance—Paragraph 32, "Return of Bike"—requiring Ruggiero to return the bicycle to Specialized within sixty days. Ex. O, § 32.

On May 4, Ruggiero's counsel returned a redline making three changes: shortening the payment deadline from sixty to thirty days, adding Ruggiero's spouse to the confidentiality provision, and deleting Paragraph 32 entirely. Ex. P (cover email); Ex. Q (redline). Ruggiero's counsel explained: "Returning the bike is a material change to an agreement negotiated to conclusion without any mention of it." Ex. P. He also disclosed that Ruggiero had sold the bicycle to a friend, on the condition that it remain available for examination and exhibit use, but that Ruggiero could not deliver it to Specialized. *Id.*

At 10:40 AM, Specialized accused Ruggiero of spoliation: "Not good. He sold his friend the allegedly defective bike? Interesting. It is also a spoliation of evidence. Once you filed suit, you and your client had a duty to preserve the bike." Ex. R. Ruggiero's counsel responded two minutes later: "It is not spoliation, we have it; we just aren't giving it back to you. You can fly up and look at it right now if you want. I'll prepare a motion to enforce the settlement as agreed if you have any hesitation on these redlines." Ex. S. Four minutes after that, Specialized declared: "Allowing a third party to use it and alter the condition is spoliation in my book. The settlement was never finalized. Go ahead and file your motion." Ex. T.

Notably, through the entire pendency of this litigation, from its inception on September 26, 2025 through today, Specialized has never once served any discovery on Ruggiero. Ard Dec. ¶ 24.

### III. ARGUMENT.

**A.  Relevant Legal Standards.**

"It is equally well settled in the usual litigation context that courts have inherent power summarily to enforce a settlement agreement with respect to an action pending before it; the actual merits of the controversy become inconsequential. … The authority of a trial court to enter a judgment enforcing a settlement agreement has as its foundation the policy favoring the amicable adjustment of disputes and the concomitant avoidance of costly and time consuming litigation." *Dacanay v. Mendoza*, 573 F.2d 1075, 1078 (9th Cir. 1978). "An agreement to settle a legal dispute is a contract and its enforceability is governed by familiar principles of contract law." *Davis v. United States*, 811 F.3d 335, 339 (9th Cir. 2016).

Washington contract law governs this Motion. "The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989), *accord Amana Glob. Co. v. King Cnty.*, 2023 WL 4998838, at *3 (W.D. Wash. Aug. 4, 2023) (citing *Andrus* and holding that "In this case, Washington state law applies."). Washington applies the common law of contracts to settlements:

> Settlements are considered under the common law of contracts. Washington follows the objective manifestation theory of contracts, which has us determine the intent of the parties based on the objective manifestations of the agreement, rather than any unexpressed subjective intent of the parties. It is the duty of the court to declare the meaning of what is written, and not what was intended to be written. … These words are given their ordinary, usual, and popular meaning unless a contrary intent is shown from the entirety of the agreement. Courts will not revise a clear and unambiguous agreement or contract for parties or impose obligations that the parties did not assume for themselves. Courts will also not imply obligations into contracts, absent legal necessity typically resulting from inadequate consideration.

*Condon v. Condon*, 177 Wash. 2d 150, 162-163 (2013).

Finally, the court may summarily enforce a settlement on motion unless a party raises a genuine dispute of material fact as to the existence or terms of the agreement. *In re City Equities Anaheim*, 22 F.3d 954, 957 (1994). An evidentiary hearing is required only if the moving papers and

opposition reveal a material factual dispute. *Id.* Here, the entire negotiation is documented in an unbroken email chain (Exs. A—T). No hearing is necessary.

**B.  The Parties Formed A Binding Agreement.**

"A contract exists when the intention of the parties is plain and the terms of a contract are agreed upon even if one or both of the parties contemplated later execution of a writing. A contract requires offer, acceptance, and consideration. There is no valid contract until an offer is accepted. Acceptance is an expression (communicated by word, sign, or writing to the person making the offer) of the intention to be bound by the offer's terms." *Veith v. Xterra Wetsuits, L.L.C.*, 144 Wash. App. 362, 366 (2008) (cleaned up). An enforceable agreement existed as of 9:52 AM on April 27, 2026. Washington contract law requires no further formalities.

"In determining whether informal writings such as letters are sufficient to establish a contract even though the parties contemplate signing a more formal written agreement, Washington courts consider whether (1) the subject matter has been agreed upon, (2) the terms are all stated in the informal writings, and (3) the parties intended a binding agreement prior to the time of the signing and delivery of a formal contract." *Morris v. Maks*, 69 Wash. App. 865, 869 (1993). All three conditions are met here.

The parties agreed on the subject: the entire thread, from the outset concerned a settlement of this litigation, in exchange for a money payment. Next, the emails contained all the terms—and in fact, even Specialized's contemporaneous communications don't dispute that. The parties expressly stated their intent to be bound, including that the agreement mooted the ongoing discovery dispute. Indeed, even today, Specialized has continued to behave as though it entered an agreement, by continuing its refusal to produce any documents in response to discovery requests served on it over three months ago.

This Court has enforced settlement agreements reached on similar terms. In *Piroshky Baking Co. LLC v. Huvard*, No. 2:20-cv-00733 (W.D. Wash. Aug. 3, 2020), the Court enforced a settlement formed when a party responded "Yes" to a settlement question by email, following a series of exchanges establishing the terms of the settlement. While the parties subsequently

Motion to Enforce Settlement Agreement - 5
*Ruggiero v. Specialized*, 2:25-cv-02053-rsm (W.D. Wash.)

ARD LAW GROUP

exchanged redlined drafts of a formal agreement, the court held that the email exchange followed by "Yes" reflected "a clear meeting of the minds" and that the subsequent redlines did not disturb the already-formed agreement. *Id.* at *3. The later exchange of a formal release was a memorialization step, not a formation requirement. The Court noted that "under Washington law, a contract is binding on the parties when the intention of the parties is plain and the parties or their counsel agree on the terms of the contract even if one or both parties contemplated signing a more formal writing in the future." *Id.* Under Washington law, "agreements with open terms are enforceable. Under an agreement with open terms, the parties intend to be bound by the key points agreed upon with the remaining terms supplied by a court or another authoritative source, such as the Uniform Commercial Code." *Fife Portal 140, LLC v. Subway Real Estate, LLC*, 2026 WL 940806, at *6 (Wash. Ct. App. Apr. 7, 2026). The Eastern District followed this rule in *Empire Health Found. v. CHS/Cmty. Health Sys. Inc.*, 370 F. Supp. 3d 1252 (E.D. Wash. 2019), holding that "Where the parties have intended to finalize a bargain, any uncertainty as to incidental or collateral matters is generally not harmful to the validity of the contract." *Id.* at 1259 (citing 25 *David K. DeWolf et al.*, Washington Practice Series § 2:27 (3d ed. rev. 2018).

Further, a post-acceptance demand for additional terms cannot undo a binding agreement. In *VACC, Inc. v. Davis*, 965 F.3d 1047, 1054—55 (9th Cir. 2020), a party's CEO subjectively believed additional terms could be inserted into the settlement agreement after it was reached. The Ninth Circuit enforced the settlement, holding that the CEO's "objective words and actions at the settlement conference demonstrate that a binding agreement was made at that time." In *Portland Marche LLC v. FNMA*, No. 23-35857 (9th Cir. May 2025), the court enforced a settlement even though the settling party objected to specific draft provisions and ultimately refused to negotiate further—holding that the refusal indicated "a change of heart about settling, not that it objected to the written terms beyond those that it identified."

These cases precisely track Specialized's conduct here. After multiple exchanges of financial terms—money in exchange for dismissal—Ruggiero, through counsel "Accepted" at 9:52. Specialized, through counsel, confirmed the deal at 9:56 AM: "Great. We will get it done."

MOTION TO ENFORCE SETTLEMENT AGREEMENT - 6
*RUGGIERO V. SPECIALIZED*, 2:25-CV-02053-RSM (W.D. WASH.)

ARD LAW GROUP

Ex. L. Eighteen minutes later, at 10:14 AM, he introduced bike return for the first time: "By the way, we are going to need the bike returned to us as part of the settlement. I think he will be able to afford a new one now, but please let me know ASAP if that is a problem." Ex. M. Neither party had ever discussed bike return as any part of an offer. As such, Ruggiero's unequivocal acceptance of Specialized's terms did not include agreeing to give them the bike. Specialized perhaps regretted that, as demonstrated by the framing of the new term an hour later, with "by the way" "please let me know ASAP if that is a problem" confirming that even Specialized understood it had injected a new term.

Finally, the redline exchanges on Specialized's formalization of the agreement further reflect that the partis had come to agreement of cash for dismissal. Ruggiero proposed three changes: speeding payment; confirming that he would not breach the confidentiality provisions by speaking to his wife; and deleting the newly added material term. The first two changes are utterly innocuous, confirming that the settlement and release—other than the return of bike term—comprised "incidental or collateral matters [which are] generally not harmful to the validity of the contract." *DeWolf*, supra.

**C. The Agreement Binds Specialized Without Regard To Current Bike Ownership.**

Faced with Ruggiero's refusal to agree to Specialized's addition of a new material term to an already-binding agreement, Specialized invented an excuse to walk from the agreement. The excuse doubly fails.

First, whether or not Ruggiero's sale of the bike constitutes "spoliation" is entirely irrelevant to the contract question. Detailed above, Washington contract law governs the formation and enforceability of the contract. That body of common law contains no "spoliation" exception for contracts formed during litigation settlement negotiations. Spoliation, if it occurs, constitutes litigation misconduct, remediable by court order—cautionary instructions, adverse inference instructions, or an award of fess, for example. But courts cannot impose compensatory discovery sanctions post-settlement. *See, e.g.*, *Bradley v. Am. Household Inc.*, 378 F.3d 373 (4th Cir. 2004) (overturning spoliation sanction imposed after settlement); *HM Elecs., Inc. v. R.F. Techs., Inc.*, 171

MOTION TO ENFORCE SETTLEMENT AGREEMENT - 7
*RUGGIERO V. SPECIALIZED*, 2:25-CV-02053-RSM (W.D. WASH.)

ARD LAW GROUP

F. Supp. 3d 1020, 1028 (S.D. Cal. 2016) ("It is well-established that parties to litigation may bargain away sanctions designed to compensate the parties themselves.").

Second, while according to Specialized, "Allowing a third party to use it and alter the condition is spoliation in my book," Ex. T, Specialized's book is not the law of the Ninth Circuit. In federal court, "Spoliation of evidence is the destruction or significant alteration of evidence, or the failure to properly preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Balla v. Idaho State Bd. of Correction*, 119 F. Supp. 3d 1271, 1282 (D. Idaho 2015). As Specialized was informed, "Steve sold the bike to a friend on the condition it be available for examination/ exhibit use, but he can't deliver it." Ex. P. Specialized can "can fly up and look at it right now …" Ex. S. The evidence—evidence Specialized never once sought during the entire pendency of the litigation, during which time it served no discovery whatsoever—has not been destroyed or significantly altered. It has been preserved for use as evidence. It's just not owned by Ruggiero. That sale does not comprise "spoliation." *See, e.g.*, *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) (no spoliation where actions "did not prevent a sufficient examination of the" product). Even if a party can renege on an agreed settlement after discovering spoliation—and no case so holds—no spoliation occurred here.

**D. This Court Should Enter Judgement Against Specialized In The Amount Of The Agreed Settlement, And Award Attorney's Fees.**

      **1.      Judgment Against Specialized Enforces The Agreement.**

"Courts have inherent power summarily to enforce a settlement agreement with respect to an action pending before it …" *Dacanay*, 573 F.2d at 1078. This includes the "authority of a trial court to enter a judgment enforcing a settlement agreement …" *Id.* When a court concludes that a settlement agreement exists, "a district court has the authority to issue a 'settlement judgment' to effectuate the settlement agreement." *U.S. E.E.O.C. v. Hosp. Housekeeping Sys. of Houston, Inc.*, 2014 WL 223536, at *2 (E.D. Cal. Jan. 21, 2014). This common process brings immediate conclusion to the litigation, effectuating the "policy favoring the amicable adjustment of disputes and the concomitant avoidance of costly and time consuming litigation." *Dacanay*, 573 F.2d at

1078. It is quite common. *See, e.g.*, *TNT Mktg., Inc. v. Agresti*, 796 F.2d 276 (9th Cir. 1986) (affirming a money judgment entered against a party who failed to comply with settlement terms); *Leverty & Assocs. L. Chtd. v. Exley*, 2019 WL 913096, at *1 (D. Nev. Feb. 22, 2019) (entering judgment in the amount the court had previously determined was "a binding settlement agreement pursuant to the terms of a draft settlement agreement"); *Burns v. Arsenault*, 2005 WL 8172974, at *1 (W.D. Wash. July 22, 2005) (entering judgment in the unpaid amount of an agreed settlement).

Here, too, the court should simply enter judgment against Specialized in the amount of the agreed settlement, namely, $175,000, and dismiss the matter with prejudice. This fully implements the parties' agreement, terminates the litigation with no more imposition on the scarce resources of the Court. It also avoids the prospect of subsequent non-compliance by Specialized, which would simply engender further litigation, likely in an overburdened state court.[1] "At a time where the resources of the federal judiciary, and this Circuit especially, are strained to the breaking point, we cannot countenance a plaintiff's agreeing to settle a case in open court, then subsequently disavowing the settlement when it suits her. The courts spend enough time on the merits of litigation; we need not (and therefore ought not) open the flood gates to this kind of needless satellite litigation." *Doi v. Halekulani Corp.*, 276 F.3d 1131, 1141 (9th Cir. 2002).

### 2.    This Court Should Award Fees.

A federal court has inherent power to assess attorney's fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45—46 (1991). The fee award must be limited to fees the innocent party would not have incurred but for the bad-faith conduct. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017). Here, every dollar Plaintiff has spent on this motion exists solely because Specialized reneged on a deal its own management authorized with its own money.

Bad faith "may be demonstrated by showing that a defendant's obstinacy in granting a plaintiff his clear legal rights necessitated resort to legal action." *Int'l Union of Petroleum & Indus.*

---

[1] *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994) (no federal jurisdiction to enforce settlement after dismissal).



*Workers v. W. Indus. Maint., Inc.*, 707 F.2d 425, 428 (9th Cir. 1983). Under those circumstances, "the award also compensates a plaintiff for the added expense of having to vindicate clearly established rights in court." *Id.* Conduct "tantamount to bad faith" is sufficient—recklessness combined with an improper purpose meets the standard. *Fink v. Gomez*, 239 F.3d 989, 993—94 (9th Cir. 2001). Specialized's conduct satisfies both formulations. Specialized confirmed the deal, Ex. L, then introduced a new material term eighteen minutes later. Ex. M. Specialized embedded that term in the release. Ex. O, § 32. When Plaintiff rejected it, Specialized baselessly reneged, and invented an equally baseless spoliation accusation while claiming that "the settlement was never finalized." Ex. T. As demonstrated above, none of Specialized's claims have any legal merit. Instead, it has elected to compel Plaintiff to incur needless expense in enforcing the terms of an agreement, while imposing additional burden on this Court. Plaintiff requests all attorney's fees and costs incurred in bringing this motion, in an amount to be presented to the Court at the conclusion of proceedings.

## IV. Conclusion.

Plaintiff respectfully requests that the Court enter judgment against Specialized in the amount of $175,000; (2) awarding Plaintiff all attorney's fees and costs incurred in bringing this motion; and (3) granting such further relief as the Court deems just and equitable.

///
///
///
///
///
///
///
///
///
///

Motion to Enforce Settlement Agreement - 10
*Ruggiero v. Specialized*, 2:25-cv-02053-rsm (W.D. Wash.)

ARD LAW GROUP

I certify that this memorandum contains 3,430 words, in compliance with the Local Civil Rules.

May 5, 2026.

ARD LAW GROUP PLLC

By: _____

Joel B. Ard, WSBA # 40104
P.O. Box 281
Kingston, WA 98346
206.701.9243
Joel@Ard.law
Attorneys for Plaintiff Steve Ruggiero

MOTION TO ENFORCE SETTLEMENT AGREEMENT - 1
*RUGGIERO V. SPECIALIZED*, 2:25-CV-02053-RSM (W.D. WASH.)