Hon. Ricardo S. Martinez

UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF WASHINGTON

STEVEN RUGGIERO,

           *Plaintiff*,

    v.

SPECIALIZED BICYCLE COMPONENTS, INC.,

           *Defendant*.

No. 2:25-cv-02053-RSM

REPLY IN SUPPORT OF
MOTION TO ENFORCE SETTLEMENT

## I. INTRODUCTION.

Specialized admits "the parties did not discuss return of the bike during settlement negotiations …" Opp. at 6:10-11, that "Defendant's email offer[ed] a specified settlement amount to resolve all claims on April 27, 2026" and that "Plaintiff sent an acceptance email stating that Plaintiff accepted the settlement amount and directing Defendant to prepare the written settlement agreement and release for execution." Opp. at 1:6-11.

Specialized contends that after the offer and acceptance, Ruggiero invited Specialized to augment the April 27 settlement with "any reasonable nonmonetary terms." Opp. at 6:11-13. It contends demanding that Ruggiero deliver a $5000 bike[1] to Specialized is a "reasonable nonmonetary term." The record before the Court belies this. After accepting the "specified settlement amount to resolve all claims," Ruggiero invited Specialized to draft "the terms of a

---

[1] *See, e.g.*, https://tinyurl.com/2suew7y8; https://tinyurl.com/eyuk6ha2.


ARD LAW GROUP

settlement and release." Dkt 025 Ex. K "Release" means "the surrender of a claim." *Barton v. Dep't of Transp.*, 178 Wash. 2d 193, 203 (2013). It does not encompass transferring ownership of tangible personal property. Throughout its Opposition, Specialized rephrases the drafting instruction it received, conceding that the bike return term is ***not*** a release and was ***not*** encompassed in the parties' April 27 agreement. This Court should enforce the April 27, 2026 settlement by entering judgment against Specialized for $175,000, dismissing with prejudice, and awarding Ruggiero reasonable attorney's fees incurred in enforcing the settlement.

## II. Argument.

Specialized agrees that the parties "did not discuss return of the bike during settlement negotiations …" Opp. at 6:10-11. Post-acceptance, Ruggiero asked Specialized to "take the pen" drafting "the terms of a settlement and release." Dkt 025 Ex. K. Specialized recharacterizes this as drafting "***any reasonable nonmonetary terms [Specialized] wanted*** …" Opp. at 6:11-13 (emphasis added). It fabricates that language because its demand is not a release, which is "the surrender of a claim … the act of giving up a right or claim to the person against whom it could have been enforced." *Barton*, 178 Wash. 2d at 203. Requiring Ruggiero to give Specialized a bicycle is not a release.

### A. The Contract Terms Are Mutually Acknowledged.

The settlement terms are undisputed. Specialized offered $175,000 to settle all claims. Dkt.025, Ex. J. Ruggiero accepted: "Accepted." Dkt.025, Ex. K. Specialized confirmed: "Great. We will get it done." Dkt.025, Ex. L. Specialized admits the negotiations and accepted offer never mentioned a bicycle. Only after offer and acceptance did Specialized introduce bike return: "By the way, we are going to need the bike returned as part of the deal." Dkt.025, Ex. M. Specialized admits this only arose after acceptance, because "the parties did not discuss return of the bike during settlement negotiations …" Opp. at 6:10-11. Its post-acceptance demand is a nullity. *VACC, Inc. v. Davis*, 823 F. App'x 474, 475—76 (9th Cir. 2020)[2]; *Portland Marche LLC v. FNMA*,

---

[2] Ruggiero's Motion erroneously gave the incorrect citation for *VACC*, pointing to the unrelated case at 965 F.3d 1047 (9th Cir. 2020). Counsel apologizes for the error.



2025 WL 1367187, at *2 (9th Cir. 2025). This suffices for this Motion. Courts routinely enforce settlements on email records. *See Piroshky Baking Co. LLC v. Huvard*, 2020 WL 4449960 (W.D. Wash. Aug. 3, 2020).

**B. Ruggiero's Acceptance Did Not Leave Open "Any Reasonable Non-Monetary Term."**

Specialized characterizes Ruggiero's "take the pen" email as inviting Specialized to include "any reasonable nonmonetary terms it wanted." Opp. at 6:11-13. Ruggiero actually wrote: "Accepted. Steve is probably a lot less particular about the terms of a ***settlement and release***, so I suspect we can close this out fastest if you take the pen. I doubt we will have much in the way of edits." Dkt.025, Ex. K (emphasis added). Specialized's Opposition replaces "terms of a settlement and release" with "any reasonable nonmonetary terms." Specialized lifted that phrase from *Meyer v. Oberto Sausage Co.*, 2019 WL 1056402, at *1 (W.D. Wash. 2019). Specialized never quotes *Meyer*'s offer language, never discusses the three factors from *Loewi v. Long*, 76 Wash. 480 (1913) that drove the decision, and offers no analysis. It avoids explaining *Meyer* because the case demonstrates the strength of Ruggiero's Motion.

*Meyer* turned on two express conditions in the offer letter itself. First, the Oberto offer expressly reserved "nonmonetary terms" for further negotiation: "we will need to discuss and agree upon the non-monetary terms." *Meyer v. Oberto Sausage Co.*, 2019 WL 1056402, at *1 (W.D. Wash. 2019). Second, the offer was "contingent on the parties entering into a mutually agreeable settlement agreement." *Id.* These two conditions—an express reservation of open terms and an express condition precedent to formation—drove Judge Pechman to deny enforcement under the *Loewi* framework.

Every *Meyer* factor inverts here. The subject matter is fully agreed—$175,000 for dismissal, as Specialized admits in its Statement of Facts. Specialized never mentioned the bike, as it also admits. Specialized reserved nothing—no "we will need to discuss" language, no reservation of any kind. Specialized imposed no condition precedent; it confirmed the deal and its sole obligation to draft a "settlement and release" with "Great. We will get it done." *Meyer* shows a conditional offer. Specialized's offer was not. Specialized's argument depends on attributing language

REPLY ISO MOTION TO ENFORCE - 3
*RUGGIERO V. SPECIALIZED*, 2:25-CV-02053-RSM (W.D. WASH.)

ARD LAW GROUP

Ruggiero never used, then investing it with meaning broad enough to let Specialized demand Ruggiero cede valuable property by calling the act "non-monetary."

Specialized devotes many words to Ruggiero's April 24 email, treating it as additional evidence that Ruggiero invited further negotiation. Opp. at 6–7. The argument fails at the threshold: Specialized's April 27 email superseded April 24. A countered offer is replaced by the counter. Ruggiero accepted Specialized's April 27 counter. But the point is irrelevant. Both emails ask Specialized to draft "a settlement and release," not add material additional non-release terms.

**C.  The Post-Formation Redlines Demonstrate Agreement, Not Negotiation.**

Specialized circulated a nineteen-page proposed release. Dkt.025 Ex. O. Ruggiero's May 4 redline, *id.* Ex. Q, changed a number and added a word—except for rejecting the material addition. He changed payment timing from 60 to 30 days, and added "spouse" to the confidentiality carve-out. Ruggiero accepted every other provision of the eighteen-page draft. Specialized acknowledged this in response on May 6: "Aside from paragraph 32 proposing return of the bike, the parties are ***in agreement on all other terms in the settlement agreement***." *See* Mohr Dec., Ex. H (emphasis added).

Specialized now argues that a subsequent redline demonstrates continued negotiation, asserting "Plaintiff continued to propose additional edits after filing his Motion to Enforce." Opp. at 6:2-23. Specialized withholds the second redline because its content undoes the argument. Far from demonstrating "continued negotiations," Ruggiero's May 11 redline reinforces that he had agreed to a settlement contract, to be papered with standard releases, as earlier acknowledged by Specialized's counsel. *See* Ard Reply Dec. Ex. A (May 11 Redline). Ruggiero voluntarily reverted payment timing to Specialized's original 60 days and added a mutual execution obligation. The sole term Ruggiero continued to reject was the bike return demand. Specialized acknowledged on May 6 that the parties had agreed to every term of a "settlement and release," as Ruggiero promised he would on accepting.

**D.  Specialized's Position Confirms That Bike Return Is A Material Change From Its Offer.**

Specialized's argument requires three mutually exclusive propositions. First, Specialized argues bike return is material enough to defeat a $175,000 settlement. Opp. at 4. But if material, it's not a "standard release" term that "take the pen" encompassed. A release surrenders a claim, it's not a material settlement term. *Barton*, 178 Wash. 2d at 203. Second, if it is material, then bike return was never "open." Specialized admits it never raised the term before acceptance. Ruggiero left "open" Specialized's phrasing of releases. Third, calling it "open" presupposes that on April 27, Ruggiero agreed to nothing more than a future agreement on whatever terms Specialized proposed. The emails show otherwise: offer and acceptance. Post-agreement drafting of form releases "is standard practice in settlement agreements between legal entities …" *Infoneuro Grp. v. Aetna Life Ins. Co.*, 2023 WL 2052781, at *2 (9th Cir. Feb. 16, 2023). Ruggiero subsequently accepted every provision Specialized drafted except the non-release obligation added after acceptance. But post-acceptance additions are nullities. *VACC*, 823 F. App'x at 475—76. The formal writing memorializes the existing agreement; it does not stand as a condition precedent to formation. *Portland Marche*, 2025 WL 1367187, at *2. To avoid enforcement, Specialized must "identify any material terms of the settlement agreement yet to be agreed on." *Id.* It cannot. Specialized admits the bike arose after agreement, and Mohr's email confirms "the parties are in agreement on all other terms in the settlement agreement." Dkt.027, Ex. H.

**E.  Specialized's Remaining Assertions All Fail.**

      **1.      Specialized Clouds Its Opposition With Attorney Argument Masquerading As Facts.**

Specialized's opposition offers attorney argument about the bicycle, unsupported by evidence. It speculates about the bike's transfer, Ruggiero's motives, and the swap arrangement— none backed by a declaration or other evidence. Attorney argument is not evidence. *Coverdell v. Dep't of Soc. & Health Servs.*, 834 F.2d 758, 762 (9th Cir. 1987). After never serving discovery and refusing both an inspection offer and a swap, Specialized accuses Ruggiero of making "an illusory promise" to swap the bike. Opp. at 3:17-20. Ruggiero himself made no bike swap promise, illusory

or not, and explicitly said that through counsel. Instead, Specialized has added obligations and refused every opportunity to inspect or secure the bike—conduct demonstrating bad faith.

**2.    The State Cases Specialized Cites Evaluate Compliance With CR2A, A State Procedural Requirement Inapplicable In Federal Court.**

*Lavigne*, *Bryant*, *Howard*, and *Eddleman* are Washington state decisions evaluating compliance with CR 2A. CR 2A does not exist in federal court, where this Court has inherent settlement enforcement authority. *Dacanay v. Mendoza*, 573 F.2d 1075, 1078 (9th Cir. 1978). Even on their own terms, none supports Specialized: *Lavigne* involved terms never discussed during mediation—an omission, not a post-acceptance addition; *Howard* involved an expressly conditional acceptance; *Bryant* turned entirely on CR 2A noncompliance; and *Eddleman* predates CR 2A and involved dueling drafts with no accepted offer.

**3.    "Spoliation" Is An Irrelevant—And False—Sideshow.**

Spoliation remedies address destruction or alteration of evidence, it does not create contract-formation defenses. No court has held spoliation defeats settlement enforcement. *See Bradley v. Am. Household, Inc.*, 378 F.3d 373, 379—80 (4th Cir. 2004) (compensatory spoliation relief "irreconcilably at odds" with settlement). In any case, the bicycle has not been spoliated. It remains intact and available for inspection.[3] Ruggiero offered inspection on May 4. Dkt.025, Ex. S. Specialized refused. A party that served zero discovery, took zero depositions, and never requested inspection cannot demonstrate discovery-related prejudice.

**4.    The Swap Offer Was Neither A Counter, Nor Illusory; Specialized Wouldn't Know Anyway.**

The May 11 swap offer—counsel's arrangement for the current owner to exchange the bicycle for an identical unit—was not a counter as Specialized asserts, because the proposal imposed no legal obligation on Ruggiero. Nor was it ever part of the settlement. Ruggiero refused to add it as his own obligation because it is not his bike. That refusal alone demonstrates it was not

---

[3] Should the Court be concerned, counsel will arrange with the current owner to present it at oral argument as a demonstrative exhibit.

REPLY ISO MOTION TO ENFORCE - 6

*Ruggiero v. Specialized*, 2:25-cv-02053-rsm (W.D. Wash.)



a counter, but a side proposal to avoid expending court resources pursuing this Motion. Counsel stated as much: ""If this is acceptable, I'll strike the hearing on the Motion, we can find a mutually agreeable time and location to make the exchange, and I'll deliver the bike and signed settlement documents" but "we are not making that a specific legal obligation on Steve." Mohr Dec., Ex. J. Specialized baselessly calls this both a "counter" and "illusory" but refused to engage with it. Ard Dec. ¶ 5. Specialized does not want the bicycle—it seeks an exit from its binding obligation.

### III. Conclusion.

Specialized contests contract formation, not the legal verity that an enforceable agreement warrants judgment and dismissal. *See Dacanay*, 573 F.2d 1078; *TNT Marketing, Inc. v. Agresti*, 796 F.2d 276, 278 (9th Cir. 1986); *Doi v. Halekulani Corp.*, 276 F.3d 1131, 1137—38 (9th Cir. 2002). Nor did Specialized contest the fee request. The Court's inherent authority supports fees where a party acts in bad faith. *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001). Ruggiero requests the Court enter his proposed Order for judgment, dismissal, and an award of fees.

///

///

///

I certify that this memorandum contains 2,061 words, in compliance with the Local Civil Rules.

May 26, 2026.

Ard Law Group PLLC

By: _____

Joel B. Ard, WSBA # 40104
P.O. Box 281
Kingston, WA 98346
206.701.9243
Joel@Ard.law
Attorneys for Plaintiff Steve Ruggiero

